FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANET F.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | No. 2:17-cv-00419-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 12, 13 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 12, and denies Defendant's motion, ECF No. 13.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on November 6, 2015, and for Title XVI supplemental security income benefits on November 8, 2015. Tr. 15, 164-65. Plaintiff alleges a disability onset date of July 1, 2013. Tr. 41. The applications were denied initially, Tr. 103-06, and on reconsideration, Tr. 108-10. Plaintiff appeared before an administrative law judge (ALJ) on January 20, 2017. Tr. 37-79. On April 25, 2017, the ALJ denied Plaintiff's claim. Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2013. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the left knee and left shoulder. Tr. 17. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ

then concluded that Plaintiff has the RFC to perform sedentary work:

> [E]xcept she cannot kneel, crouch, crawl, or climb ladders, ropes, or
> scaffolds, and she can only rarely (10% or less of the time) climb
> stairs; she can perform other postural activities only occasionally; she
> cannot operate foot controls with the left lower extremity and cannot
> use one upper extremity while walking because of her use of a cane;
> she can only occasionally push, pull, and reach overhead with the left
> upper extremity; and she can have no concentrated exposure to
> extreme cold or heat, vibrations, or hazards such as unprotected
> heights and moving mechanical parts.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as, receptionist and switchboard operator.  Tr. 27.  Therefore,

the ALJ concluded Plaintiff was not under a disability, as defined by the Social

Security Act, from the alleged onset date of July 1, 2013, though the date of the

decision.  Tr. 27.

On October 20, 2017, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis; and

3. Whether the ALJ conducted a proper step-five analysis.

ECF No. 12 at 6-20.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the opinions of Harvey Alpern, M.D.; Timothy Ritchey, M.D.; Arild Lein, M.D.; Leland Rogge, M.D.; Jerry Park, D.O; David Green, M.D.; Thomas Miller, D.O.; P. Michael O'Brien, M.D.; and Gordon Hale, M.D.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1996)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Alpern

Dr. Alpern, an internal medicine and cardiovascular disease physician, testified as the impartial medical expert. Tr. 406. Dr. Alpern diagnosed Plaintiff with degenerative joint disease of both knees and the left shoulder. Tr. 42. Dr. Alpern testified that Plaintiff's conditions together met Listing 1.02. Tr. 42. Dr. Alpern also opined that Plaintiff could perform sedentary work, lift ten pounds occasionally, lift less than ten pounds frequently, stand and walk for two hours, sit for six hours, ambulate with a cane, and occasionally push, pull, and reach overhead with the left upper extremity. Tr. 44. Dr. Alpern testified that Plaintiff's knee condition was a painful condition and that because of the pain she would be absent more than two days a month and also recognized that because Plaintiff's treating physician Dr. Richey mentioned that Plaintiff had swelling in the knees that Plaintiff probably needed to elevate her legs when lying down or taking breaks. Tr. 45-46.

The ALJ assigned Dr. Alpern's opinion partial or little weight. Tr. 23-24. Because Dr. Alpern's opinion was contradicted by the nonexamining opinions of Dr. O'Brien, Tr. 84-86, and Dr. Hale, Tr. 96-98, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Alpern's opinion. *See Bayliss*, 427 F.3d at 1216.

ORDER - 10

First, the ALJ discounted Dr. Alpern's opinion because it was internally inconsistent. Tr. 23. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ found that Dr. Alpern's initial testimony that Plaintiff met Listing 1.02 was inconsistent with his subsequent testimony that Plaintiff "did not have bilateral knee impairments, and did not have inability to ambulate effectively such as the use or need for a walker or two canes, or similarly situational accommodation for both sides." Tr. 23. Contrary to the ALJ's conclusion, Dr. Alpern testified that Plaintiff *did* have bilateral knee impairments. Tr. 42. Although Dr. Alpern recognized that Plaintiff's knee problems were primarily with her left knee, he also testified that the medical record, including x-rays, supported bilateral knee impairments. Tr. 42. The Court has not located nor did Defendant identify any instance where Dr. Alpern testified that Plaintiff did not have bilateral knee impairments. Moreover, consistent with Dr. Alpern's testimony, bilateral knee x-rays in December 2015 revealed minimal degenerative joint disease bilaterally. Tr. 567-68.

Next, the ALJ concluded that Dr. Alpern's testimony that Plaintiff's knee impairment combined with her shoulder impairment jointly met Listing 1.02 was inconsistent with his later opinion that Plaintiff could perform sedentary level

work, which was consistent with the ALJ's RFC. Tr. 23, 20 (citing Tr. 42-44). If a claimant has a combination of impairments, not one of which meets a listing, the Commissioner compares the findings with those for closely analogous listed impairments. Soc. Sec. Rlg. 17-2p. "If the findings related to the impairments are at least of equal medical significance to those of a listed impairment," the combination of impairments is found to be medically equivalent to that listing. *Id.* Here, Dr. Alpern opined that Plaintiff met Listing 1.02 because, even though she did not use a walker or canes in both holds and therefore did not directly satisfy Listing 1.02, her limited use of her left shoulder resulted in the medical equivalent to Listing 1.02 as Plaintiff had bilateral knee issues, she used a cane in her right hand to provide stability for her left knee, and the use of her left upper extremity was limited. Tr. 42-44. Moreover, Dr. Alpern testified that Plaintiff was unable to ambulate effectively. Tr. 43. While internal-opinion inconsistency is a factor to consider, that one meets a listing requirement is not inherently inconsistent with a sedentary-work RFC. Under the five-step sequential evaluation, the determination of whether one satisfies a listing is a different legal question than determining the claimant's RFC. *See* 20 C.F.R. §§ 404.1520(d), (e), 416.920(d), (e) (identifying that the ALJ determines the RFC only if the impairment does not meet or equal a listed impairment). That Dr. Alpern opined that Plaintiff could perform sedentary work was not a legitimate and specific reason alone to discount Dr. Alpern's

opinion that Plaintiff met Listing 1.02 when the cumulative impact of her impairments was considered.

Second, the ALJ credited Dr. Alpern's opinion that Plaintiff could do sedentary work because it was consistent with the objective medical record. Tr. 23-24. An ALJ may choose to credit an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Here, the ALJ found that a sedentary-work limitation was consistent with the record and the other medical source opinions. In making this assessment, the ALJ concluded: "[c]ontrary to Dr. Alpern's testimony, [Plaintiff] clarified that while she did have a history of two arthroscopic surgeries on the right knee, this was well over 10 years ago, and she had not experienced any problems or difficulties with her right knee since." Tr. 24. The ALJ noted that Dr. Alpern likely concluded that Plaintiff's right knee limited her because of the notes in the medical file that Plaintiff had "two scopes right knee," Tr. 308, and "internal derangement of both knees," Tr. 350-58. Plus, the ALJ found that the recent treatment records revealed no complaints about Plaintiff's knee giving out. Tr. 21. When the record is reviewed as a whole, these findings are not supported by substantial evidence. *See Holohan*, 246 F.3d at 1205 (requiring the ALJ to read an opinion in full and in the context of the entire record). As an initial matter, contrary to the ALJ's recitation of Plaintiff's testimony, Plaintiff in fact testified

that she had pain in her right knee. Specifically, Plaintiff testified that she experienced pain in *both* knees that radiated to her calves when she stood in one place, sat, or walked for too long. Tr. 58, 61-63. While Plaintiff testified that immediately after her right knee surgery, she did not have a problem, Tr. 70, the record reflects that Plaintiff began suffering pain and mobility issues again in her knees within three months after her left knee surgeries, consistent with her bilateral degenerative joint disease, *see, e.g.*, Tr. 382, 336, 383-85, 333-34, 320, 318, 355-57. In addition, Plaintiff also testified that because she had been compensating for her left knee for years, she now experienced stabbing pain and giving out in her right knee. Tr. 64-65. Moreover, Plaintiff's testimony is consistent with her reports of right knee pain to her medical providers and the consultative examiners beginning in 2015, *see, e.g.*, Tr 355 (May 2015: "now starting to have pain on the right side"); Tr. 374 (Aug. 2015: reporting increasing pain of both left and right knees); Tr. 567-68 (Dec. 2015: reporting that right knee is worse than left knee pain); Tr. 523 (April 2016: same); Tr. 555 (Dec. 2016: reporting right knee pain); Tr. 541 (reporting that her right knee gave out on her a couple of occasions). Furthermore, Plaintiff's testimony and reports about her right knee pain are consistent with the medical evidence, which reflected: the right knee's range of movement was restricted, Tr. 316; tenderness over the lateral aspect of the right knee, Tr. 374; bilateral minimal degenerative joint disease, Tr. 499, 567-68 (x-

ORDER - 14

rays); medial joint line tenderness on both knees, Tr. 510; some minimal effusion

of the right knee, Tr. 524; continued use of the cane to provide stability, Tr. 511,

555; and an antalgic gait or a limp, Tr. 322, 328-29, 333-37, 374, 541, 553, 555.

Without further explanation, the ALJ's finding that a sedentary-work limitation

was consistent with Plaintiff's testimony is not supported by the record.

The ALJ also credited Dr. Alpern's sedentary opinion on the grounds that it

was consistent with the other medical source opinions. Tr. 23-24. The ALJ did

not identify the "other medical source opinions" consistent with Dr. Alpern's

opinion that Plaintiff could perform sedentary work, which is defined as:

> involv[ing] lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small atolls.
> Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in carrying
> out job duties. Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. In turn, "occasionally" means:

> occurring from very little up to one-third of the time. Since being on
> one's feet is required "occasionally" at the sedentary level of exertion,
> periods of standing or walking should generally total no more than
> about 2 hours of an 8-hour workday, and sitting should generally total
> approximately 6 hours of an 8-hour workday.

SSR 83-10. Turning to the other medical source opinions, Dr. Ritchey (a treating

physician) opined in 2016 that Plaintiff could sit for thirty minutes at one time,

stand for ten minutes at one time, and sit and stand/walk for less than two hours

total in an eight-hour work day and needed a job that permitted shifting from

ORDER - 15

sitting to standing to walking. Tr. 482. Treating physician Dr. Park opined in 2014 that Plaintiff could perform a sitting-only job in a wheelchair for four hours per day. Tr. 317. The other treating physician of record, Dr. Miller, agreed with examining orthopedic surgeon Dr. Green, who opined in 2013 that Plaintiff was limited to sitting, standing, and walking for one hour at a time and could only sit, stand, or walk one hour each during an eight-hour work day. Tr. 296. Examining physician Dr. Rogge opined in 2014 that Plaintiff could sit for two hours at a time but was unable to walk or stand for an hour. Tr. 315. In 2015, the final examining physician Dr. Lein opined that Plaintiff was limited to light work as she was able to walk or stand six out of eight hours of the day. Tr. 415. The nonexamining physicians Dr. O'Brien and Dr. Hale opined in 2015 that Plaintiff could stand and/or walk for four hours a day and sit for six hours a day. Tr. 84-86, 96-98. This full review of the other medical opinions reveals that there were no other physicians who opined that Plaintiff could perform sedentary work. Instead, 1) some physicians opined that Plaintiff was unable to perform sedentary work: Dr. Ritchey, Dr. Park, Dr. Rogge, Dr. Green, Dr. Miller, and 2) some physicians opined that Plaintiff could perform light work: Dr. Lein, Dr. O'Brien, and Dr. Hale. Because the identified reasons for crediting Dr. Alpern's opinion that Plaintiff could perform sedentary work—that Plaintiff testified she did not have any difficulties with her right knee and the other medical source opinions were

consistent with sedentary work—are not supported by the evidence, the ALJ's

decision to credit Dr. Alpern's sedentary opinion is likewise unsupported.

Third, the ALJ discounted Dr. Alpern's opinion that Plaintiff would miss

two days of work per month because of pain because it was speculative. Tr. 24.

An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or

not supported by the record. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004). As a nonexamining medical expert, who reviewed the

full medical record, Dr. Alpern was permitted to opine as to Plaintiff's residual

functional capacity, including her ability to sustain attendance at work. The ALJ

does not identify how Dr. Alpern's opinion is speculative nor did the ALJ ask Dr.

Alpern to clarify or support this opinion during the hearing. *See Regennitter v.*

*Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory

reasons will not justify an ALJ's rejection of a medical opinion."). Moreover, Dr.

Alpern testified that Plaintiff's knees condition was painful and, consistent with

Dr. Richey's statements, Plaintiff would need to elevate her swollen leg(s). Tr. 45-

46. On this record, it was not a legitimate and specific reason to discount Dr.

Alpern's opinion on the grounds that it was speculative.

Finally, the ALJ discounted Dr. Alpern's attendance opinion because

Plaintiff used a conservative pain management regimen. Tr. 24. An ALJ may give

less weight to a medical opinion that recommends conservative treatment. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, as the testifying expert, Dr. Alpern was not a medical provider who recommended treatment. Instead, Dr. Alpern reviewed the medical record, which reflected that several physicians prescribed opiates to Plaintiff to assist with pain following two left knee surgeries to repair a meniscal tear. *See, e.g.*, Tr. 203, 290, 317, 374, 524, 528, 541, 553-56. Plaintiff testified that she tried not to rely too much on the narcotic pain medicine but instead tried to use a non-narcotic, Tylenol Arthritis, to reduce pain symptoms. Tr. 58-60. In addition, Plaintiff sought relief for her left knee pain through injections, but these did not provide much pain relief. Tr. 385 (May 10, 2013), Tr. 387-88 (Sept. 2013), Tr. 389 (Feb. 2014), Tr. 510-11. Even though Plaintiff tried to minimally use narcotic pain medicine, she still regularly refilled narcotic prescriptions. *See, e.g.*, Tr. 553 (indicating that Plaintiff used 120 hydrocodone tablets over a three-month period, which is at least 1 hydrocodone pill daily). The record also reflects that physicians counseled Plaintiff about the addictiveness of the prescribed narcotic pain medicine. Tr. 317, 390, 524, 553-54, 556. The ALJ's conclusion that this record demonstrates conservative treatment is not supported by substantial evidence. Because the record reflects that Plaintiff's bilateral knee condition was painful and caused swelling, requiring Plaintiff to elevate her feet and use a cane for stability, Plaintiff's choice to supplement her prescribed narcotic

pain medicine with non-narcotic pain relief was not a legitimate and specific reason, on this record, to discount Dr. Alpern's attendance opinion. *Cf. Trevizo v. Berryhill*, 871 F.3d 664, 680 n.8 (9th Cir. 2017) (recognizing it is inappropriate to discount a claimant's symptom testimony because she declined to take prescribed narcotics because she feared addiction and took other medication that addressed her pain).

In sum, the ALJ failed to provide specific and legitimate reasons to reject Dr. Alpern's opinions.

*2. Dr. Ritchey*

From about 2013 to 2016, Dr. Ritchey was Plaintiff's primary care physician. *See, e.g.*, Tr. 350-63, 373-79, 382-88, 481, 510-11, 523-23, 541-42, 550-55. In December 2016, Dr. Ritchey diagnosed Plaintiff with degenerative arthritis of the knees. Tr. 481-83. He opined that Plaintiff could walk one block or less, sit for thirty minutes at one time, stand for ten minutes at one time, sit and stand/walk each for less than two hours total in an eight-hour workday; required a job that permitted shifting from sitting to standing to walking; needed to walk around every fifteen minutes for ten minutes each time; and needed several breaks during the workday because of her pain. Tr. 482. Dr. Ritchey further opined that Plaintiff's legs should be elevated stool high and noted that elevation temporarily provides relief but then makes Plaintiff's pain worse; she cannot twist, crouch,

squat, or climb stairs or ladders and should rarely stoop or bend; she should never

lift more than twenty pounds and should rarely lift items that weigh less; she had

no manipulative limitations and could reach overhead; she would be off task

twenty-five percent or more of the workday because her pain would interfere with

her attention and concentration; and that she would be absent more than four days

per month because of her symptoms.  Tr. 483-84.

The ALJ assigned Dr. Ritchey's opinion little weight.  Tr. 25.  Because Dr.

Ritchey's opinion was contradicted by the nonexamining opinions of Dr. O'Brien,

Tr. 84-86, and Dr. Hale, 96-98, the ALJ was required to provide specific and

legitimate reasons for rejecting Dr. Ritchey's opinion.  *See Bayliss*, 427 F.3d at

1216.

First, the ALJ discounted Dr. Ritchey's opinion because he treated Plaintiff

only three to four times a year.  Tr. 25.  The number of times a claimant meets

with a provider is a relevant factor in assigning weight to an opinion.  20 C.F.R.

§§ 404.1527(c), 416.927(c).  Additionally, the extent to which a medical source is

"familiar with the other information in [the claimant's] case record" is relevant in

assessing the weight of that source's medical opinion.  20 C.F.R. §§ 404.1527(c),

416.927(c).  Moreover, the ALJ "may consider an acceptable medical source who

has treated or evaluated [a claimant] only a few times or only after long intervals

(e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition(s)." 20 C.F.R. §§ 404.1527(a)(2),416.927(c). The record reflects that Dr. Ritchey examined Plaintiff on at least four occasions in 2015, Tr. 350-57, 373-79, 510-11, and at least five occasions in 2016, Tr. 523-24, 541-42, 550, 553, 555-56. Moreover, in addition to his own observations, Dr. Richey reviewed reports prepared by specialists, *see, e.g.,* Tr. 555 (noting that the Northwest Orthopedics notes were in his file). Given that the ALJ gave great weight to the one-time, largely unexplained evaluation opinion of Dr. Lein, Tr. 413-15, and the nonexamining opinions of Dr. Hale and Dr. O'Brien, Tr. 84-86, 96-98, the fact that Dr. Richey treated Plaintiff three to four times a year is not a specific and legitimate reason to discount his opinion.

Second, the ALJ discounted Dr. Ritchey's opinion because there was no significant or meaningful treatment. Tr. 25. An ALJ may give less weight to a medical opinion that recommends conservative treatment. *Rollins*, 261 F.3d at 856. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (casting doubt on characterizing epidural injections and physical therapy as conservative treatment). Here, Defendant submits that Plaintiff is merely asking the Court to

reach a different interpretation of the evidence than reached by the ALJ. ECF No. 13 at 16. However, the ALJ did not discuss the nature and scope of Dr. Ritchey's treatment of Plaintiff, other than stating Plaintiff "was given some hydrocodone for nighttime use and could use plain Tylenol during the day . . . [and to] follow up on an as-needed basis," Tr. 23, nor identified how it was insignificant or unmeaningful. In fact, the record reflects that, in addition to prescribing hydrocodone, discussing the addictive nature of hydrocodone, and having her follow-up with him as needed, Dr. Ritchey authorized an MRI and an injection for Plaintiff's left shoulder, Tr. 361-63; referred Plaintiff to Northwest Orthopaedic Specialists for her bilateral knee and left shoulder pain, *see, e.g.*, Tr. 391; and was apprised of Plaintiff's treatment, including surgery, by Northwest Orthopaedic Specialists, Tr. 382-96, 424-25. Lacking sufficient analysis of the treatment that occurred, the ALJ's decision to discount Dr. Ritchey's opinion because there was no significant treatment is not a legitimate or specific reason supported by substantial evidence on this record.

Third, the ALJ discounted Dr. Ritchey's opinion because there were no clinical findings consistent with Dr. Ritchey's assessment. Tr. 25. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957. Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's

treatment notes.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Here, the

ALJ neither identified the clinical findings that were inconsistent with Dr.

Ritchey's functional capacity assessment nor explained why Dr. Ritchey's notation

that Plaintiff's impairments "as demonstrated by signs, clinical findings and

laboratory or test results" were "reasonably consistent with the symptoms and

functional limitations described" was unsupported.  Tr. 25, 484.  Without the ALJ

offering more than his stated conclusion, the Court is unable to meaningfully

review whether the ALJ's interpretation of the evidence, rather than Dr. Ritchey's

opinion, is rational.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

2015); *Embrey*, 849 F.2d at 421-22 (requiring the ALJ to identify the evidence

supporting the found conflict to permit the Court to meaningfully review the ALJ's

finding).  Moreover, in addition to reviewing the orthopedic clinic notes, Tr. 382-

96, 424-25, and the December 2015 bilateral x-ray of the knees, which showed

joint space narrowing in the medial compartments in both knees with small

osteophytes along the margins of the bilateral joints, Tr. 499-500, the record

reflects that Dr. Ritchey observed Plaintiff on different occasions over a two-year

period with abnormal symptoms, including walking with an antalgic gait with

likely minimal effusion and tenderness in the medial and inferior patellar areas of

the knee, Tr. 356; walking with a cane and an antalgic gait with tenderness over the

lateral aspect of the right knee and a diffusely tender left knee, Tr. 374; using a

cane and with medial joint line tenderness on both knees, Tr. 510; walking with a cane and an antalgic gait with mild bilateral degenerative knee joint disease, Tr. 541-42; walking with a slight antalgic gait, Tr. 553; and walking with a cane with a somewhat antalgic gait and subtle effusion of the left knee compared to the right knee, Tr. 556. The ALJ failed to identify why on this record Dr. Richey's treating opinion about Plaintiff's degenerative bilateral knee condition was given less weight than the non-examining physicians' opinions.

In summary, the ALJ did not offer specific and legitimate reasons supported by substantial evidence for discounting Dr. Ritchey's treating opinion.

### 3. Dr. Lein

In September 2015, Dr. Lein evaluated Plaintiff for State Department of Social and Health Services purposes. Tr. 413-18. No diagnosis was listed, but Dr. Lein listed that an x-ray of Plaintiff's left knee showed early osteoarthritic change of the left pellofemoral joint space, Plaintiff had meniscal repair in 2012 and debridement in 2013 of the left knee, and she had arthroscopic surgery of her right knee in 2002. Tr. 414-15. Dr. Lein opined that Plaintiff was limited to light work, which was identified on the form as "able to lift [twenty] pounds maximum and frequently lift or carry up to [ten] pounds, able to walk or stand six out of eight hours per day, and able to sit and use pushing or pulling arm or leg movements most of the day." Tr. 415. Dr. Lein opined that Plaintiff's work limitations would

ORDER - 24

persist for five months and that Plaintiff needed to have orthopedic surgery on her shoulder and physical therapy on her knee.  Tr. 415.

The ALJ assigned varying weight to Dr. Lein's opinion.  Tr. 25.  Because Dr. Lein's opinion was contradicted by Dr. Ritchey's opinion, Tr. 481-83, the ALJ was required to provide specific and legitimate reasons for both crediting and discounting Dr. Lein's opinion.  *See Bayliss*, 427 F.3d at 1216 *Garrison*, 759 F.3d at 1012-13; *Lester,* 81 F.3d at 831.

The ALJ afforded some weight to Dr. Lein's opinion because it confirmed that Plaintiff could perform light level work and therefore was not disabled.  Tr. 25.  An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4); *Nguyen*, 100 F.3d at 1464.  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, the ALJ simply stated that Dr. Lein's light level residual functional capacity "confirms that [Plaintiff] is not disabled."  Tr. 25.  This conclusory statement fails to meet the ALJ's burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Trevizo*, 871 F.3d at 675 (internal citations omitted).  The ALJ failed to

explain why Dr. Lein's opinion, which was only supported by reference to undated

x-rays of Plaintiff's left knee (early osteo arthritic change of the left patellofemoral

joint space), right knee (negative), lumbar spine (negative), and left shoulder

(negative), Tr. 414, and a chart reflecting that Plaintiff's range of motion was

limited in both knees, Tr. 417-18, supports a finding that Plaintiff is not disabled,

considering the other medical evidence. Moreover, the more recent medical

records revealed bilateral degenerative joint disease of the knees, Tr. 499, 567-68,

and that Plaintiff still had acromioclavicular joint arthritis, impingement syndrome

(separate compartment), and partial thickness rotator cuff tear and tendinosis

(separate compartment) after her left shoulder surgery, Tr. 424. On this record, the

ALJ's decision to afford weight to Dr. Lein's opinion that Plaintiff is not disabled

is not supported by a legitimate and specific reason.

### 4. Dr. Rogge

In April 2014, orthopedic surgeon Dr. Rogge conducted an independent

medical examination of Plaintiff for the State Department of Labor and Industries

and diagnosed her with a left-knee tear of the medial and lateral meniscus (status

post-partial medial and lateral meniscectomy) and pre-existing degenerative

arthritis of the left knee, which was permanently aggravated by the former

condition. Tr. 305-10. Dr. Rogge opined that Plaintiff had too much pain to work

at her job of injury and recommended that Plaintiff have a total knee replacement

and then return for an impairment rating. Tr. 311. Dr. Rogge opined that, "[w]ith a wheelchair, [Plaintiff] could work at a light duty job, but I do not think this is practical"; that she could sit for two hours at a time and stand or walk for one-half hour each at a time. Tr. 313-15. He opined that Plaintiff could not use her left foot to operate foot controls but could use her right foot to operate foot controls. Tr. 315. Dr. Rogge opined that Plaintiff could grasp, push, pull, and manipulate with her arms; could frequently bend and reach above her shoulder level, and could not squat, kneel, crawl, or climb. Tr. 315.

The ALJ rejected Dr. Rogge's opinion that Plaintiff needed to use a wheelchair at work and assigned partial or limited weight to the remainder of Dr. Rogge's opinion. Tr. 24. Because Dr. Rogge's opinion was contradicted by the nonexamining opinions of Dr. O'Brien, Tr. 84-86, and Dr. Hale, 96-98, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Rogge's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Rogge's opinion because it had an exceptionally limited nature. Tr. 24. Factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, the ALJ did not explain what he meant by "the exceptionally limited nature of [Dr.

Rogge's] assessment," Tr. 24. It is unclear whether the ALJ was referring to the fact that Dr. Rogge met with Plaintiff on one occasion, to the scope of the evaluation, or the scope of written opinion. On this record, without additional explanation or a citation to the record, this was not a specific and legitimate reason to discount Dr. Rogge's opinion. *See Thomas*, 278 F.3d at 957 (recognizing the ALJ's duty to set out a detailed and thorough summary of the facts and conflicting clinical evidence, interpret that evidence, and make specific findings); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Second, the ALJ discounted Dr. Rogge's opinion as equivocal. Tr. 24. An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Here, the ALJ noted that Dr. Rogge's checkmark assessment was somewhat difficult to decipher and appeared to suggest that Plaintiff could perform a full range of light work. Tr. 24. While Dr. Rogge marked that Plaintiff could sit, stand, and walk for eight hours in a workday and stated that Plaintiff could do a "light duty job" while in a wheelchair, Dr. Rogge also marked that Plaintiff was limited to sitting two hours at a time and was unable to sit or walk for more than a half-hour at a time. Tr. 313-15. As the ALJ identified, there are inconsistencies in Dr. Rogge's report. However, when Dr. Rogge's opinion is read in its entirety, it is clear that Dr. Rogge considered Plaintiff severely limited. *See Holohan*, 246

F.3d at 1205 (requiring the ALJ to read an opinion in full and in the context of the entire record).  Dr. Rogge found "an increase in objective medical findings, effusion in the [left] knee, and tricompartmental arthritis on an MRI," Tr. 313.  Dr. Rogge found that osteoarthritis was delaying Plaintiff's recovery and causing the knee condition to become worse as she had knee effusion and limited motion in the knee.  Here, the ALJ needed to review the entirety of Dr. Rogge's opinion to appreciate that Dr. Rogge's phrase "light duty job" was not synonymous with "light work" as defined by the Social Security Administration:

> involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 416.917, 404.1567.  An "adjudicator[] must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms."  SSR 96-5p (eff. until March 27, 2017).  Because Dr. Rogge opined that Plaintiff could only seldom lift objects weighing eleven to twenty pounds, could not operate foot controls with her left foot, was limited to sitting two hours at a time, and was limited to sitting and standing only a half-hour at a time, the ALJ erred by finding that Dr. Rogge's reference to "light duty job" indicated that Plaintiff could work "light work" as defined by the Social Security

Administration, particularly because Dr. Rogge's light-duty statement was predicated by Plaintiff's use of a wheelchair. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (finding that there was no evidence that the physician was aware of the SSA's definition of "sedentary work"). While the ALJ crafted an RFC that limited Plaintiff to sedentary work, rather than light work, the ALJ's errors regarding Dr. Rogge's opinion caused the ALJ to evaluate Dr. Rogge's opinion—and the entire record—under the mistaken understanding that Dr. Rogge opined that Plaintiff was capable of light work and thereby deemed it to be equivocal. *See, e.g.*, *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (remanding the case because the ALJ erred in discounting the opinions of the claimant's treating physician based on the ALJ's misunderstanding of the claimant's condition).

Finally, the ALJ rejected Dr. Rogge's opinion that Plaintiff needed to use a wheelchair as unsupported by the record. Tr. 24. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, the ALJ did not explain why Dr. Rogge's suggestion that Plaintiff work an eight-hour workday in a wheelchair was "entirely unsupported" considering Dr. Rogge's observations, which included observing Plaintiff walk with a very antalgic gait with the use of a cane, effusion in

ORDER - 30

the left knee, pain along the medial and lateral joint lines and pain beneath the patella.  Moreover, the medical record revealed pre-existing and aggravated tricompartmental osteoarthritis of the left knee, Tr. 309-13, and as is discussed *infra* and *supra*, all treating physicians and two examining physicians opined that Plaintiff was unable to stand or sit for more than two hours in a day.  It is unclear on this record why Plaintiff needing to use a wheelchair at work is entirely unsupported.

### 5. Dr. Park

In 2013 and 2014, Dr. Park treated Plaintiff.  *See, e.g.*, Tr. 316-20, 326, 328, 335.  On August 2, 2014, Dr. Park diagnosed Plaintiff with a torn medial meniscus, degenerative changes, and exacerbation of chronic pain in the left knee.  Tr. 316.  Dr. Park opined that "it does seem reasonable that she should be able to perform a sitting only job in a wheelchair for [four] hours per day.  The issue is her ability to drive and ambulate to and from her vehicle into a job site." Tr. 317.  Dr. Park then stated that he would refill her pain medication and complete necessary paperwork to allow Plaintiff "to prepare for her light-duty job as it does seem she has at least some worsening of symptoms in the last 1-2 weeks." Tr. 317.

The ALJ assigned Dr. Park's opinion partial or little weight.  Tr. 25.  Because Dr. Park's opinion was contradicted by the nonexamining opinions of Dr. O'Brien, Tr. 84-86, and Dr. Hale, 96-98, the ALJ was required to provide specific

and legitimate reasons for discounting Dr. Park's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Park's opinion because it was phrased as an opinion on the least Plaintiff could do, not the most she could do. Tr. 25. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 416.917(a)(1), 404.1527(a)(1). In deciding how much weight to give to a medical opinion, the ALJ may consider the physician's understanding of the disability programs and the extent to which the medical source is familiar with the claimant's medical record. 20 C.F.R. §§ 416.917(c)(6), 404.1527(c)(6). Here, citing to SSR 96-8p, which states that an "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*," Defendant argues the ALJ appropriately discounted Dr. Park's opinion because it was phrased as an opinion on the least Plaintiff could do. However, the ALJ provided no explanation for, nor is there a basis in the record, to support the ALJ's conclusion that Dr. Park opined as to the least that Plaintiff could do. Without supporting analysis, the ALJ's decision to discount Dr. Park's opinion on the grounds that it was phrased as

an opinion on the least Plaintiff could do, not the most she could do, is not a legitimate and specific reason on this record.

Second, the ALJ discounted Dr. Park's opinion that Plaintiff was limited to a wheelchair because it was inconsistent with the record. Tr. 25. An ALJ may discount a medical opinion that is unsupported by the clinical findings and is inconsistent with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, the ALJ did not articulate how Dr. Park's opinion limiting Plaintiff to working in a wheelchair is inconsistent with the record. *See Brown-Hunter*, 806 F.3d at 492; *Embrey*, 849 F.2d at 421-22. Moreover, as discussed *supra*, Dr. Rogge opined that Plaintiff could work in a wheelchair. Tr. 313. The record also reflects that when Plaintiff was released to modified work for a short period of time following her acute left knee injury and surgery, Plaintiff worked in a wheelchair. Tr. 319. Accordingly, without explanation, the ALJ's decision to discount Dr. Park's wheelchair opinion on the grounds that it was inconsistent with the record is not a specific and legitimate reason on this record.

Third, the ALJ discounted Dr. Park's opinion because it was internally inconsistent. Tr. 25. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ found Dr. Park's opinion to be

internally inconsistent because Dr. Park indicated that Plaintiff could do both a "sitting-only" job and a "light-duty" job. Tr. 25. Plaintiff argues the ALJ erred by assuming that Dr. Park intended the phrase "light-duty job" to be interpreted consistent with the Social Security Administration's definition of light work. ECF No. 12 at 13 (citing SSR 96-5p, 20 C.F.R. §§ 416.917, 404.1567). As discussed *supra*, an ALJ may not assume that a medical source using terms such as "light work" is aware of the Administration's definition of this term. SSR 96-5p (eff. until March 27, 2017). When Dr. Park's opinion is read in its entirety and in its context, it is not clear that Dr. Park used the phrase "light-duty job" consistent with the Administration's definition of "light work." *See Orteza*, 50 F.3d at 750. Dr. Park's work comments were in relation to Plaintiff's State Labor and Industries proceeding. Tr. 317. Moreover, Dr. Park's reference to the light-duty job followed his discussion that Plaintiff could perform a sitting-only job in a wheelchair for four hours per day and that she would have difficulty driving and ambulating to and from her vehicle to the job site. On this record, the ALJ's finding that Dr. Park opined that Plaintiff could perform "light work" as defined by the Social Security Administration is unsupported.

While the ALJ ultimately crafted an RFC that limited Plaintiff to sedentary work, rather than light work, the ALJ's errors regarding Dr. Park's opinion caused the ALJ to evaluate the entire record under the mistaken understanding that Dr.

ORDER - 34

Park opined that Plaintiff was capable of light work. *See Benecke*, 379 F.3d at 594. Moreover, the ALJ failed to discuss Dr. Park's four-hour work limitation, which is inconsistent with an ability to work on a sustained basis, and therefore would result in Plaintiff being considered disabled. *See* SSR 96-8p.

Defendant argues that any error as to the ALJ's treatment of Dr. Park's opinion is harmless because the ALJ was not required to address Dr. Park's conclusory opinion as it was not a medical opinion but instead an opinion on an issue reserved to the Commissioner. ECF No. 13 at 14. This argument is not persuasive because Dr. Parks did not opine that Plaintiff was "disabled." Rather, Dr. Park opined that Plaintiff was limited to a sitting job in a wheelchair for four hours per day. The ALJ was to consider this opinion, in its entirety, compare it with the remaining record, and provide sufficient analysis so that the Court could meaningfully review the ALJ's decision to discount Dr. Park's opinion. *See Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957; *Embrey*, 849 F.2d at 421-22. Lacking sufficient analysis, the ALJ's decision to discount Dr. Park's opinion is not supported by a specific and legitimate reason.

### 6. Dr. Green and Dr. Miller

In July 2013, Dr. Green, an orthopedic surgeon, examined Plaintiff's left knee for State Labor and Industries purposes. Tr. 289-300. Dr. Green diagnosed Plaintiff with internal derangement of the left knee with tear of the menisci and

chondromalacia, noting that Plaintiff was status-post two medial and lateral partial meniscectomies to the left knee.  Tr. 293.  Dr. Green ordered an MRI of Plaintiff's left knee.  Tr. 294.  After reviewing the left knee MRI,[1] Dr. Green opined that Plaintiff's acute-knee injury was fixed and stable.  Dr. Green opined that Plaintiff:

- was limited to sitting, standing, and walking 1) one hour each at a time, and 2) one hour each during an eight-hour work day;

- could only occasionally lift 21-25 pounds, seldom lift 26-50 pounds, and never lift more than 51 pounds;

- had no restrictions with either her left or right hand;

- could frequently reach above her shoulders;

- could use her right foot but not her left foot for operating foot controls; and

- could seldomly bend, squat, kneel, crawl, or climb.

Tr. 296.

---

[1] Dr. Green mistakenly referred twice to Plaintiff's right knee instead of her left knee in his report.  Tr. 290.

ORDER - 36

On July 26 and 30, 2013, Plaintiff's treating physician Dr. Miller completed a form for State Department of Labor and Industries on which he checked a box indicating he concurred with Dr. Green's opinion. Tr. 301, 303.

The ALJ assigned great weight to Dr. Green's and Dr. Miller's opinions. Tr. 24. An ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion. *Garrison*, 759 F.3d at 1012-13.

First, the ALJ gave great weight to Dr. Green's opinion because he is an orthopedic surgeon. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). This was a supported reason to give greater weight to Dr. Green's opinion.

Second, the ALJ gave great weight to this opinion because it was agreed-upon by both Dr. Green and Dr. Miller. Tr. 24. An ALJ may choose to give more weight to an opinion that is more consistent with the record. 20 C.F.R. § 416.927(c)(4); *Nguyen*, 100 F.3d at 1464; *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, the ALJ found that Dr. Miller's adoption of Dr. Green's evaluation was compelling evidence that Plaintiff was not disabled. Tr. 24. While consistency with the record is a relevant factor, as is discussed *infra*, the ALJ failed to appreciate that Dr. Green opined that Plaintiff had sitting, standing, and walking

limitations—and that Dr. Miller also agreed that Plaintiff had sitting, standing, and walking limitations.

Finally, the ALJ gave great weight to these opinions on the grounds that they were adequately supported. Tr. 24. Relevant factors to evaluating any medical opinion include the amount of evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4). Here, the ALJ noted that Dr. Green conducted a thorough physical exam and review of the records, which included Plaintiff's July 2013 MRI. Tr. 24. These are legitimate reasons for giving great weight to these opinions. However, the ALJ also recognized that there "appeared to be some mis-markings on the checkmark form such as indications the [Plaintiff] could stand/walk for one hour at a time." Tr. 24. Notwithstanding these "mis-markings," the ALJ found that the "clear intent of [Dr. Green's] assessment was that [Plaintiff] could perform between light and medium level work with only some minor postural limitations" and therefore the ALJ effectively discounted Dr. Green's assessment that Plaintiff could stand, walk, or sit for only one hour at a time. Tr. 24, 296. Without a more meaningful discussion of the evidence to support the ALJ's finding, the Court is unable to assess whether the ALJ's decision

to interpret Dr. Green's opinion as supporting the ability to perform light and medium level work is supported by substantial evidence. The ALJ apparently found it inconsistent for Dr. Green to opine that Plaintiff was limited to sitting, standing, or walking each one hour at a time and then also impose this same one-hour limitation for the eight-hour work day. But the ALJ failed to discuss that Dr. Green rated Plaintiff as ten-percent impaired under Table 17-33 of the American Medical Association Guides to the Evaluation of Permanent Impairment. Tr. 295. Such a rating results in Plaintiff qualifying as Class 2 in Table 13-15: "rises to standing position; walks some distance with difficulty and without assistance, but is limited to level surfaces." The ALJ failed to explain how a Class 2 finding is inconsistent with Dr. Green's sitting, standing, and walking limitations and moreover how these limitations are consistent with the ALJ's finding that Dr. Green's "clear intent of his assessment was that [Plaintiff] could perform between light and medium level work with only some minor postural limitations." Tr. 24. Moreover, Dr. Green observed Plaintiff with a slightly left antalgic gait, questionable instability related to balancing, difficulty ambulating on her heels, and with a left knee that incompletely extended and with impacted range of motion. Tr. 292. The ALJ's inference that Dr. Green opined that Plaintiff could perform light and medium level work is not supported by the medical findings or the record. *See Garrison*, 759 F.3d at 1014 (deciding that the ALJ misunderstood

the medical report when determining that it supported a finding that the claimant was capable of light work and therefore not disabled); *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006). Thus, while the ALJ stated that he gave great weight to Dr. Green's opinion, he gave great weight to the misinterpreted opinion that Plaintiff could perform light or medium level work, rather than to Dr. Green's opinion that Plaintiff was limited to sitting, standing, and walking each for one hour—an opinion that was largely consistent with Dr. Ritchey's more recent December 2016 opinion that Plaintiff could sit and stand/walk for less than two hours in an eight-hour work day. Moreover, even Dr. Alpern testified that due to Plaintiff's painful bilateral knee condition and left shoulder condition, Plaintiff would need to elevate her feet even if she performed a sedentary job and that she would be absent more than two days a month because of pain. Tr. 482.

Defendant submits the ALJ properly discounted Dr. Green's one-hour limit for sitting, standing, and walking because an ALJ may discount a check-the-box assessment. ECF No. 13 at 11 (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). However, Dr. Green's opinion included more than his check-the-box assessment; it was accompanied by his seven-page report. Tr. 289-96. Therefore, the ALJ could not properly discount Dr. Green's assessment because it was set forth on a check-the-box form without further analysis. *See Trevizo*, 871 F.3d at 667 n.4. Moreover, this was not a reason (use of a conclusory check-the-box form)

identified by the ALJ to discount Dr. Green's opinion. *See Orn*, 495 F.3d at 630

(recognizing the court's review is limited to only reasons provided by the ALJ to

discount a medical opinion).

In summary, the ALJ erroneously interpreted Dr. Green's and Dr. Miller's

opinions as not being as limited as opined.

### 7. Dr. O'Brien and Dr. Hale

Both Dr. O'Brien and Dr. Hale served as State agency medical consultants.

On March 3, 2015, Dr. O'Brien reviewed the medical evidence then of record. Tr.

81-82. Dr. O'Brien diagnosed Plaintiff with reconstructive surgery of weight

bearing joint, and osteoarthrosis and allied disorders. Tr. 83. On August 4, 2015,

Dr. Hale reviewed the medical evidence then of record. Tr. 92-94. Dr. Hale

diagnosed Plaintiff with reconstructive surgery of weight bearing joint,

osteoarthrosis and allied disorders, and dysfunction of major joints. Tr. 96. Both

Dr. O'Brien and Dr. Hale opined that Plaintiff could stand and/or walk for four

hours; sit for six hours; occasionally lift and carry twenty pounds; frequently lift or

carry ten pounds; occasionally crawl and climb ramps or stairs; never climb

ladders, ropes, or scaffolds; and frequently kneel and crouch. Tr. 84-85, 97. They

both opined that Plaintiff did not have manipulative limitations. Tr. 85, 97.

The ALJ assigned Dr. O'Brien's and Dr. Hale's opinions great weight. Tr.

23. Because Dr. O'Brien's and Dr. Hale's opinions were contradicted by Dr.

ORDER - 41

Ritchey's opinion, Tr. 481-83, the ALJ was required to provide specific and legitimate reasons for crediting Dr. O'Brien's and Dr. Hale's opinions. *See Bayliss*, 427 F.3d at 1216; *Garrison*, 759 F.3d at 1012-13.

The ALJ assigned great weight to Dr. O'Brien's and Dr. Hale's opinions because they were based on the medical evidence. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Here, the ALJ simply offered a conclusory statement that Dr. O'Brien's and Dr. Hale's opinions "are reasonable opinions based on the medical evidence." Tr. 23. This conclusory statement fails to meet the ALJ's burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (internal citations omitted). The ALJ fails to explain why Dr. O'Brien's and Dr. Hale's opinions, which were largely devoid of any explanation other than stating that "pain is considered in [the] RFC," Tr. 85, 98, and summarizing the reviewed medical records, Tr. 86, 95, were consistent with the longitudinal medical evidence. Moreover, as discussed *supra*, following Dr. O'Brien's and Dr. Hale's 2015 opinions, Plaintiff's degenerative knee conditions continued to deteriorate, consistent with Dr. Rogge's finding that Plaintiff's left knee osteoarthritis was permanently aggravated by the 2011 work

injury and retarded recovery, Tr. 312, and as is reflected in the more recent medical evidence and the opinion Dr. Ritchey.  Considering the other medical evidence, the ALJ failed to provide specific, legitimate reasons for crediting Dr. O'Brien's and Dr. Hale's nonexamining opinions.

Yet, the ALJ proceeded to find, based on Plaintiff's testimony, the other medical opinions, and indications that Plaintiff needs to use a cane to ambulate, that Plaintiff was more limited than as opined by Dr. O'Brien and Dr. Hale.  Tr. 23. Thus, even though the ALJ gave great weight to Dr. O'Brien's and Dr. Hale's opinions, the ALJ discounted the opinions considering the other medical evidence. This discounting is supported by substantial evidence.  However, as is discussed *infra*, the ALJ's sedentary RFC is not consistent with the medical evidence that must be credited-as-true.

In summary, the ALJ erroneously weighed the medical evidence.  This error is consequential as the ALJ failed to credit Dr. Alpern's opinion about Plaintiff's listing status and, at a minimum, the sedentary RFC does not call for 1) rotating between sitting, standing, or walking, or more-restrictive time intervals for these functions, and 2) the need for non-standard breaks or unproductive time.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

**B. Step Three**

Plaintiff contends the ALJ erred by finding that Plaintiff did not meet Listing 1.02. ECF No. 12 at 6-10. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The ALJ must receive into evidence during the administrative hearing the opinion of the testifying medical examiner on the issue of listing equivalence and give appropriate weight to that opinion. SSR 96-6p (eff. July 2, 1996, to March 27, 2017). The claimant bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, the ALJ found that Plaintiff's impairments and combination of impairments did not meet or equal any listings, including Listing 1.02, which governs the major dysfunction of a joint due to any cause. Tr. 19-20; 20 C.F.R. pt.

404, subpt. P., app. 1, listing 1.02.  Listing 1.02 is satisfied by a gross anatomical deformity, e.g., subluxation, contracture, bony or fibrous ankylosis, instability, and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s). *Id.* There must be findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). *Id.* Paragraph A covers the involvement of one major peripheral weight-bearing joint, such as a knee, resulting in the inability to ambulate effectively:

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B(2)(b).  Paragraph B covers the involvement of one major peripheral joint in each upper extremity, i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively. 20 C.F.R. pt. 404, subpt. P., app. 1, listing 1.02.  If a claimant has a combination of impairments, not one of which meets a listing, the Commissioner

ORDER - 45

compares the findings with those for closely analogous listed impairments. Soc. Sec. Rlg. 17-2p. "If the findings related to the impairments are at least of equal medical significance to those of a listed impairment," the combination of impairments is found to be medically equivalent to that listing. *Id.*

Here, the ALJ found that, although Plaintiff has a history of two failed medial meniscus repair surgeries that resulted in a partial medial meniscectomy, and a left shoulder rotator cuff repair surgery, Plaintiff can ambulate with a cane and has no fine or gross manipulation limitations. Tr. 19. The ALJ noted that 1) a July 2014 MRI of Plaintiff's left knee revealed that Plaintiff's left knee condition was stable to slightly improved from the most recent comparison; 2) imaging in December 2015 showed only minimal bilateral degenerative joint disease; and 3) physical therapy records showed that after her left shoulder surgery Plaintiff recovered with minimal residual findings. Tr. 19-20 (citing Tr. 338-39, 499); *see also* Tr. 427-79. Plaintiff faults the ALJ for failing to find her degenerative knee conditions, in conjunction with her left shoulder impairment, do not satisfy Listing 1.02. ECF No. 12 at 8 (citing SSR 17-2p). The Court agrees. As discussed *supra*, the ALJ failed to credit Dr. Alpern's testimony that Plaintiff meets Listing 1.02 when her bilateral knee conditions and left shoulder conditions are considered cumulatively. Plaintiff has (post-surgery) degenerative joint disease in both knees, which impacts her gait, stability, and mobility and causes pain, tenderness, and

swelling.  *See, e.g.*, Tr. 413, 280, 380, 499, 510-11, 523-24, 527, 539, 541-42, 555-56.  As a result, Plaintiff uses a cane in her right hand.  *See, e.g.*, Tr. 63, 553. Following Plaintiff's surgery on her left shoulder in 2015, Dr. Ritchey and Dr. Alpern recommended lifting and overhead restrictions for Plaintiff's left upper extremity.  Tr. 483.  Likewise, left upper extremity restrictions were included in the RFC.  Tr. 20.  On this record, even though Plaintiff does not use a walker or a cane in both hands and she therefore does not directly satisfy Listing 1.02, her limited use of her left shoulder results in the medical equivalent to Listing 1.02. Moreover, as recognized by Dr. Alpern, Plaintiff is unable to ambulate effectively for purposes of sustained gainful employment.  Tr. 43.

The Court concludes that the ALJ erred in finding that Plaintiff's impairments considered cumulatively did not meet Listing 1.02.  Accordingly, Plaintiff erred in failing to find that Plaintiff was disabled at step three.

**C. Step Five**

As an alternative basis for remand, at step five, Plaintiff challenges the ALJ's evaluation of the vocational expert's testimony at step five.  ECF No. 12 at 18.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2)

such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389.

First, Plaintiff argues the ALJ failed to resolve a conflict between 1) the vocational expert's testimony that the two identified jobs—receptionist and switchboard operator—required frequent handling and occasional fingering (receptionist) and constant handling and frequent fingering (switchboard operator) and 2) the ALJ's finding that Plaintiff only can occasionally reach overhead with her left upper extremity. ECF No. 12 at 18-19; Tr. 57, 74-76, 20. The Dictionary of Occupational Titles (DOT) "is not the sole source of admissible information concerning jobs." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Rather the ALJ may rely on expert testimony that contradicts the DOT if the record contains persuasive evidence to support the deviation. *Id.* Here, the vocational expert testified, given his thirty years of experience and industry and professional resources, that Plaintiff could perform the jobs of receptionist and switchboard, notwithstanding the identified DOT handling and fingering requirements. Tr. 76. This testimony serves to resolve the conflict between the identified DOT requirements and Plaintiff's ALJ-found limitations. *See* SSR 00-4p, 2000 WL 1898704, at *2.

Second, Plaintiff faults the ALJ for failing to include opined limitations in the RFC. ECF No. 12 at 9, 11-17. In assessing whether there is work available,

ORDER - 48

the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray*, 554 F.3d at 1228.

Plaintiff argues the RFC is deficient because it fails to incorporate many opined limitations. As discussed, both *supra* and *infra*, by failing to provide specific and legitimate reasons for discounting the opinions of Dr. Alpern, Dr. Green, Dr. Miller, Dr. Rogge, and Dr. Richey, the ALJ erred by failing to incorporate additional limitations into the RFC. This error is consequential to the disability determination.

**D. Remedy**

Plaintiff urges this Court to either award benefits or remand for further proceedings. ECF No. 12 at 1, 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*, 379 F.3d at 595; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020. Under the credit-as-true rule, the court may remand for an award of benefits if 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Revels*, 874 F.3d at 668. Yet, even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

### 1. Completeness of the Record

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence . . . may well prove enlightening" in light of

the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen*, 100

F.3d at 1466–67 (remanding for ALJ to apply correct legal standard, to hear any

additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60

F.3d 639, 642 (9th Cir. 1995) (same).

Here, the record is sufficiently developed.  It contains about 500 pages of

significant evidence, including several treating providers and three consultative

examinations, about Plaintiff's bilateral knee conditions and her left shoulder and

related treatment.  The record contains Plaintiff's function reports and testimony,

as well as the testimony of the medical examiner and the vocational expert.

### 2.  ALJ Error

As discussed *supra*, the ALJ failed to provide legally sufficient reasons,

supported by substantial evidence, for discounting the opinions of Dr. Alpern, Dr.

Ritchey, Dr. Rogge, Dr. Park, Dr. Green, and Dr. Miller.  On this record, the

second prong of the credit-as-true rule is met.

### 3.  Crediting as True Demonstrates Disability

The third prong of the credit-as-true rule is satisfied for several reasons.

First, if Dr. Alpern's testimony that Plaintiff satisfies Listing 1.02 when her

impairments are considered cumulatively is credited, then Plaintiff is considered

disabled.  Second, if Dr. Alpern's and Dr. Ritchey's opinions that Plaintiff would

be absent more than two days a month were credited as true, the ALJ would be

required to find Plaintiff disabled. The vocational expert testified that an individual missing one or more days per month is precluded from substantial gainful employment. Tr. 77. Third, if Dr. Ritchey's opinion that Plaintiff requires a job that permits shifting from sitting to standing to walking, walking around every fifteen minutes, and multiple breaks throughout the day was credited as true, the ALJ would be required to find Plaintiff disabled. The vocational expert testified that a person who is off-task ten percent or more during the day is precluded from substantial gainful employment. Tr. 76-77. Likewise, if Dr. Park's opinion that Plaintiff was limited to a sitting-only job in a wheelchair for four hours per day or if Dr. Rogge's testimony that Plaintiff could sit for two hours but was unable to stand or walk for an hour were credited as true, the ALJ would be required to find Plaintiff disabled. Tr. 77. Finally, if Dr. Green and Dr. Miller's opinion that Plaintiff was limited to sitting, standing, and walking one hour each, as well as one-hour total during an eight-hour work day, was credited as true, the ALJ would be required to find Plaintiff disabled.

### 4. Serious Doubt

Finally, the record does not leave serious doubt as to whether Plaintiff is disabled. *See Garrison*, 759 F.3d at 1021. Plaintiff's impacted mobility due to her bilateral knee conditions is well documented and agreed to by each of the three treating physicians, whom offered an opinion, and two examining physicians (one

of whom was an orthopedic surgeon).  Although the level of effusion and pain that Plaintiff experiences in her knees and left shoulder waxes and wanes, the record reveals that if Plaintiff were to work an eight-hour workday, even in a sedentary position with feet elevated, that Plaintiff's pain would hinder her ability to stay on task and maintain attendance as tolerated by an employer.  Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application.  *Treichler*, 775 F.3d at 1100.  Here, the four-year delay since the date of the application makes it appropriate for this Court to use its discretion and apply the credit-as-true doctrine.

In sum, under the credit-as-true doctrine, Plaintiff is entitled to benefits both because she established that she meets Listing 1.02, and in the alternative, the limitations that should have been included in the RFC would have precluded competitive employment.  The Court therefore reverses and remands for the calculation and award of benefits.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 25, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE